IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Fonda Bostic,** | : | |
| Plaintiff, | : | |
| | : | Case No. 3:20-cv-00101-TPK |
| vs. | : | |
| **Andrew Saul,** | : | **Magistrate Judge Kemp** |
| **Commissioner of** | | |
| **Social Security,** | : | |
| Defendant. | : | |

**OPINION AND ORDER**

Plaintiff Fonda Bostic filed this action seeking review of a final decision of the Commissioner of Social Security. That decision, issued by the Appeals Council on January 30, 2020, denied her applications for social security disability benefits and supplemental security income. Plaintiff filed a statement of errors on August 27, 2020 (Doc. 12) to which the Commissioner responded on September 28, 2020 (Doc. 13). The parties have consented to final disposition of this case by a United States Magistrate Judge. For the following reasons, the Court will **SUSTAIN** the statement of errors (Doc. 12) and **REMAND** the case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

**I. INTRODUCTION**

Plaintiff protectively filed her applications on June 24, 2016, alleging that she became disabled on September 13, 2013. A previous application had been denied and that denial was affirmed by this Court. *See Bostic v. Colvin*, 2016 WL 552699 (S.D. Ohio Feb. 12, 2016), *adopted and affirmed* 2016 WL 815313 (S.D. Ohio March 2, 2016). After initial administrative denials of her claims, she was given a hearing before an Administrative Law Judge on June 13, 2018. Plaintiff and a vocational expert, Brian Womer, testified at the hearing.

The ALJ issued an unfavorable decision on December 5, 2018. In that decision, she first found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2014, and that she had not engaged in substantial gainful activity since her alleged onset date. The ALJ next concluded that Plaintiff suffered from severe impairments including degenerative disc disease of the lumbar spine, diabetes, fibromyalgia, obesity, major depressive disorder, anxiety disorder, post-traumatic stress disorder, and borderline intellectual functioning.

However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff could, until July 30, 2018, perform a reduced range of light work. She concluded that Plaintiff was capable of the exertional demands of light work except that she could stand and walk for only four hours in a workday (and sit for six). She could never climb ropes, ladders, stairs, and scaffolds, but she could occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. Lastly, she could perform simple, routine, repetitive tasks but not at a fast production rate pace or with strict production quotas, could adapt to simple changes in the work environment, and could do jobs that did not require more than a third grade reading level.

The ALJ decided that with these limitations, Plaintiff could not perform her past relevant work as a home health aide. However, she could, in accordance with the testimony of the vocational expert, do light jobs such as housekeeper, laundry worker, and inspector/hand packager. The ALJ also found, in accordance with the expert's testimony, that these jobs exist in significant numbers in the national economy. As a result, she concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In her statement of errors, Plaintiff raises a single issue. She asserts that the ALJ erred in applying the criteria under which treating source opinions - in this case, the opinion of Dr. Smith - are evaluated, and that a remand is necessary in order to correct that error

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020)**,**

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d

at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III. FACTUAL BACKGROUND

The Court will begin its review of the factual background of this case by summarizing the testimony given at the administrative hearing. It will then recite the pertinent information found in the medical records.

Plaintiff, who was 49 years old when she filed her applications, testified that she lived in a one-floor residence with her husband, who also did not work outside the home. She had a driver's license and was able to drive herself to church. She had left school before completing the eighth grade and was in special education classes. Plaintiff had worked as a home health aide, a job that required a substantial amount of lifting.

The problem that initially led Plaintiff to seek disability was that she began to fall frequently. That happened both at work and at home. She was experiencing problems with her balance and she had severe back pain radiating to her legs and hips. Her medication helped to some extent with her pain. She wore a back brace on a daily basis. In addition to her physical problems, Plaintiff suffered from extreme anxiety, which was treated by Dr. Smith, whom she saw every two or three months. Her anxiety interfered with her sleep and she was taking medication for both problems. Her memory was also deteriorating.

Finally, Plaintiff testified that she had trouble walking and experienced real problems if she was on her feet for an hour. She also suffered from headaches and took medication for those as well. On a daily basis, Plaintiff tried to pick up around the house and do some cooking. She said that she had taken her driver's test by tape recording because she had difficulty reading anything more complicated than a first or second grade storybook.

The vocational expert, Brian Womer, was first advised that during the prior proceedings it had been determined that Plaintiff could not do her past relevant work. He was then asked questions about a person who could perform a reduced range of light work with various postural and mental restrictions. As those restrictions were refined to those contained in the ALJ's final residual functional capacity, he identified light unskilled jobs such as housekeeper, laundry

worker, and inspector or hand packager as jobs which such a person could perform.  He agreed that if such a person were off task for two-thirds of the day due to being distracted by her symptoms, that person could not work.

Since Plaintiff's statement of errors focuses on the opinion of the treating mental health professional, Dr. Smith, the Court's review of the medical records will largely be confined to those which relate to Plaintiff's mental health conditions.  The Court will provide a very brief summary of the other records relating to her pain, which was a factor in Dr. Smith's opinion.

In June, 2012, Plaintiff sought treatment for depression from Mental Health Services of Clark County.  She underwent fourteen treatment sessions but was terminated from the provider in 2013 after missing two appointments.  Her various symptoms, including irritability, mood swings, panic attacks, and impaired focus and concentration, were not fully addressed, but she was continuing with treatment from Dr. Smith.  An extensive set of treatment notes from a later provider, Mercy Health, also indicates that she was receiving mental health treatment from Dr. Smith, and noted that she had encountered some memory problems due to depression.  Her "Problems List" included both fibromyalgia and depression.  Her mental state was sometimes described as anxious and sometimes as normal.  She was also treated for migraines.  In 2017 her problems included both acute and chronic pain and anxiety and stress.

Dr. Smith completed an "Impairment Questionnaire" on April 5, 2018.  He noted that he had been treating Plaintiff since 2014 for major depression, severe, recurrent, without psychotic features, and chronic PTSD.  Her signs and symptoms included poor memory, sleep disturbance, mood disturbance, emotional lability, pervasive loss of interest, psychomotor agitation, feelings of guilt or worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, intrusive recollections of a traumatic experience, and generalized persistent anxiety.  Under "clinical findings," he indicated that she had significant impairment in focus and concentration which impaired her ability to remember and complete tasks.  Dr. Smith listed Plaintiff's medications and said that her prognosis included some improvement but that she was experiencing a continuing inability to follow through with work tasks or to tolerate stress.  He believed that her chronic pain was a contributing factor to her degree of impairment, and concluded that she would miss more than three days of work per month and be off task two-thirds of the time if she were in a work environment. (Tr. 1051-53).

The mental health treatment notes showed that in 2014, Plaintiff had developed some coping skills but that her anxiety was still an unresolved problem.  In 2015 she showed significant progress but her cycles of anxiety and depression had not resolved and a number of treatment notes showed an increase in anxiety and well as tearfulness.  A psychosocial assessment done at the beginning of 2017 reported that Plaintiff had been more depressed in 2016 with situational stressors and that she was experiencing intrusive memories and nightmares, and that she also had symptoms of decreased appetite and sleep, decreased energy and motivation, feeling overwhelmed, and memory problems.  Her interest in self-care had decreased as well and she had verbal outbursts at times.  She was also socially isolating.  Her mood was

described as anxious and she had an immediate recall impairment, Therapy with a goal of decreasing her symptoms of anxiety and depression was recommended. She also demonstrated increased anxiety and depression at a visit with Dr. Smith in January, 2017, and reported having panic attacks. The same was true the month before. although a note from September of that year showed some moderate progress. A note made at the same time as the Impairment Questionnaire was completed indicated that she presented with a depressed, anxious, and constricted mood and affect and that she suffered from reduced focus and concentration. Medical provider notes from 2017 also indicated that she was positive for chronic pain.

The state agency psychological reviewers, the last of whom expressed his opinion in November, 2016, concluded that there was no basis for changing the residual functional capacity finding made in the prior case. There, the ALJ found that Plaintiff could do unskilled work involving only occasional changes in the work environment. *See* Tr. 135.

## IV. DISCUSSION

As noted above, Plaintiff asserts that the ALJ erred in her evaluation of Dr. Smith's opinion. Dr. Smith was a treating source, and his opinion was required to be weighed in accordance with the law applicable to Plaintiff's applications at the time they were filed. As this Court has explained the treating physician regulation,

> a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. § 404.1527(c); *see also Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983); *Estes v. Harris*, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. *Moon v. Sullivan,* 923 F.2d 1175 (6th Cir. 1990); *Loy v. Secretary of HHS*, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

*Morris v. Comm'r of Soc. Sec.*, 2016 WL 6574158, at *4 (S.D. Ohio Nov. 7, 2016), *report and recommendation adopted,* 2017 WL 1287146 (S.D. Ohio Apr. 6, 2017).

As explained more fully in the Court's summary of the medical evidence, Dr. Smith, in

his answers to the impairment questionnaire, concluded that Plaintiff would miss work more than three times per month and would be distracted by her symptoms two-thirds of the time. He based this opinion on the fact that her chronic pain and her depression each aggravated the other impairment and that although she had shown some improvement, she could still not follow through with work tasks and could not tolerate stress, being easily overwhelmed. The ALJ gave this opinion less than controlling weight because Dr. Smith "fail[ed] to give[] a function by function analysis of the claimant's ability supported by objective findings." (Tr. 28). The ALJ did not think Plaintiff's memory deficits affected her ability to attend work on a regular basis or to stay on task and that providing accommodations in the form of simple tasks and no production quotas accounted for any memory deficits that might have been present. She also observed that Dr. Smith's notes showed improvement in Plaintiff's symptoms and that her depression was somewhat situational, reasoning that employment would assist Plaintiff by addressing her worry about finances. Finally, she did not think that Dr. Smith should have considered Plaintiff's physical impairment because he treated Plaintiff only for her psychological conditions. *Id*. The ALJ did not indicate, however, what weight she gave Dr. Smith's opinion. She did specify that she gave some weight to the opinions of the state agency reviewers although she imposed greater limitations than they did because of Plaintiff's "IQ scores now of record and evidence of the claimant (sic) recent memory impairment." *Id*., citing to Exhibits C12F and C14F.

Plaintiff cites a number of reasons why this analysis is not proper. First, she argues that the ALJ conflated the two-step analysis applicable to treating source opinions by failing to determine, at the first step, whether the opinion was well-supported by medically acceptable diagnostic techniques and not inconsistent with the medical evidence of record. Second, she asserts that, contrary to the ALJ's decision, Dr. Smith did provide a functional analysis of Plaintiff's abilities and his opinion was supported by the medical evidence, and that there was an abundance of evidence of the symptoms (such as poor memory, mood disturbances, and emotional lability) which Dr. Smith used to support his opinion. She notes as well that the type of evidence used to support an opinion as to mental health restrictions is not the same as objective evidence of physical impairments. Lastly, she contends that the ALJ read the record of improvement of her symptoms too selectively, and that Dr. Smith was clearly entitled to determine how Plaintiff's chronic pain impacted her psychological conditions.

There is a serious issue here with respect to the ALJ's articulated analysis of Dr. Smith's opinion. Procedurally, this Court has described the correct process as follows:

> Evaluation of a treating source's opinion consists of a two-step process, and care must be taken "not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). A treating source's opinion must be given controlling weight if it is well-supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(c)(2). If the treating source's opinion is not entitled to controlling weight, the ALJ must consider several factors in determining how much deference is owed. *Id*. These factors

include supportability and consistency. 20 C.F.R. § 416.927(c)(3) and (4).

*Bohannon v. Comm'r of Soc. Sec.*, 2020 WL 1227191, at *2 (S.D. Ohio Mar. 13, 2020).

Here, although the ALJ recited the correct standard and process (Tr. 27-28), she did not follow it. Rather, she immediately discounted Dr. Smith's opinion for various reasons which did not involve determining if it was supported by the proper type of diagnostic techniques and if it was not inconsistent with substantial evidence in the case record. The brief mention of the lack of a function-by-function analysis "supported by objective findings" simply does not satisfy this regulatory requirement. As the Court said in *Bohannon, supra*, "supportability and consistency are to be considered only after the ALJ finds that the treating physician's opinion is not entitled to controlling weight." There is also scant evidence that the ALJ considered many of the other relevant factors set out in the applicable regulations, including the length of the treatment relationship, Dr. Smith's area of specialization, his qualifications, and the degree to which he offered support for his conclusions.

There are reasons in addition to these procedural failings which counsel in favor of remand, however. As noted, the ALJ never indicated how much weight she gave to Dr. Smith's opinion once she did not afford it controlling weight. She also used his alleged failure to provide a function-by-function analysis as a basis for giving his opinion some lesser amount of weight, but, in fact, Dr. Smith indicated many functional limitations in addition to the extent to which Plaintiff would miss work or be distracted by symptoms, including her inability to follow through with work tasks, to focus and concentrate, and to deal with work stress. These are functional limitations, and they are not acknowledged in the ALJ's decision. It is further unclear how the ALJ determined that limiting Plaintiff to simple tasks done in an environment without production quotas would be sufficient to accommodate her memory deficits; there is no opinion evidence that this would be so, and she does not tie her conclusion to any part of the medical evidence. Additionally, although there is some progress or improvement noted in the records, there are also notes which show an increase in depression and anxiety and a failure to meet treatment goals, and the ALJ fails to explain how that evidence factored into her decision to discount Dr. Smith's opinions. She also does not cite support for the proposition that a psychiatrist cannot take a patient's chronic pain into account in determining how she would react psychologically to work pressure or situations. Lastly, although the ALJ did not fully credit the opinions of the state agency reviewers - a reasonable decision since they adopted findings from 2013 and had no opportunity to review the 2017 treatment notes or Dr. Smith's 2018 opinion - she also did not explain how Plaintiff's IQ scores or recent memory impairment factored into her residual functional capacity finding other than by asserting, without evidentiary support, that excluding work with production quotas somehow made up for a deficit in short-term memory.

All of these factors persuade the Court that the ALJ made reversible errors in her consideration of the treating source opinion from Dr. Smith. A social security plaintiff is entitled to have the Commissioner follow the law when determining how much weight to give to a treating source opinion, and to discount such an opinion only for reasons having substantial

suport in the record.  Because that did not happen here, a remand for further proceedings is required.

### V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **SUSTAINS** the statement of errors (Doc. 12) and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

 /s/ **Terence P. Kemp**
**Terence P. Kemp**
**United States Magistrate Judge**